## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HILTI AKTIENGESELLSCHAFT,    )
    )
       Plaintiff,    )
    )
    )    C.A. No. 23-244-CFC
    )
      v.    )
    )
SPECIFIED TECHNOLOGIES INC.,    )
    )
       Defendant.    )

## HILTI AKTIENGESELLSCHAFT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE SPECIFIED TECHNOLOGIES INC.'S UNCLEAN HANDS DEFENSE

GARDELLA GRACE P.A.

W. Cook Alciati
80 M Street SE, 1st Floor
Washington, D.C. 20003
(703) 721-8379
calciati@gardellagrace.com

Michael A. Dorfman
2502 North Clark Street, Suite 222
Chicago, IL 60614
(773) 755-4942
mdorfman@gardellagrace.com

Dated: May 23, 2023

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Pilar G. Kraman (No. 5199)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com

*Attorneys for Hilti
Aktiengesellschaft*

# **TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................1

II.  NATURE OF STAGE OF PROCEEDINGS .......................................2

III. SUMMARY OF ARGUMENT ............................................................3

IV. STATEMENT OF FACTS ....................................................................4

V.  LEGAL STANDARDS..........................................................................5

VI. ARGUMENT..........................................................................................6

   A.  The Court should strike STI's "Unclean Hands" defense.................6

      1.  Hilti's conduct in obtaining continuation patents was consistent with settled patent prosecution practices. ......................................................7

      2.  STI has not properly pled its fraud-based unclean hands theory ...............10

      3.  STI should not be permitted to shoe-horn an antitrust claim into its unclean hands defense...........................................................................14

      4.  Allowing STI to insert inequitable conduct and antitrust issues into this case through an unclean hands defense will prejudice Hilti. ......................16

   B.  The Court should strike STI's "Introduction" to its Answer..........................17

VI. CONCLUSION ....................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*,
  No. 19-1727-RGA, 2022 WL 11819975 (D. Del. Oct. 20, 2022)........................6

*Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*,
  No. 19-1727-RGA, 2022 WL 16921800 (D. Del. Nov. 14, 2022).............6, 9, 10

*Barry v. Stryker Corp.*,
  No. 20-1787, 2023 WL 2733652 (D. Del. Mar. 20, 2023)...................................5

*C.R. Bard, Inc. v. M3 Sys. Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998) .........................................................................14

*Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*,
  159 F.3d 129 (3d Cir. 1998) ..............................................................................15

*DSM Desotech Inc. v. 3D Sys. Corp.*,
  No. 08-1531, 2008 WL 4812440 (N.D. Ill. Oct. 28, 2008)................................17

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) .........................................................................11

*Gilead Sciences, Inc. v. Merck & Co. Inc.*,
  888 F.3d 1231 (Fed. Cir. 2018) ...................................................................10, 11

*Invista N. Am. S.a.r.l. v. M&G USA Corp.*,
  No. 11-1007-SLR-CJB, 2013 WL 12304544 (D. Del. May 3, 2013) ...........11, 12

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
  863 F.2d 867 (Fed. Cir. 1988) .............................................................................9

*Orthophoenix, LLC v. Dfine, Inc.*,
  No. 13-1003-LPS, 2015 WL 1938702 (D. Del. Apr. 28, 2015)........................17

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997) ..............................................................................15

*Smith & Nephew, Inc. v. Interlace Medical, Inc.*,
  No. 10-10951-RWZ, 2013 WL 3289085 (D. Mass. Jun. 27, 2013)...................12

*Symbol Techs., Inc. v. Aruba Networks, Inc.*,
  609 F. Supp. 2d 353 (D. Del. 2009).............................................................16, 17

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ............................................................11, 12, 16

*Tyco Healthcare Group LP v. Mutual Pharms. Co., Inc.*,
  762 F.3d 1338 (Fed. Cir. 2014) ........................................................................14

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................6

Fed. R. Civ. P. 12(c) ...........................................................................................8

Fed. R. Civ. P. 12(f).............................................................................5, 6, 16, 17

Plaintiff and Counterclaim-Defendant Hilti Aktiengesellschaft ("Hilti") respectfully submits this Opening Brief in Support of its Motion to Strike Defendant and Counter-Claim Plaintiff Specified Technologies, Inc.'s ("STI") Affirmative Defense of Unclean Hands.

## I.   INTRODUCTION

In its Answer to Hilti's Complaint in this Action, STI asserts "Unclean Hands" as its Seventh Affirmative Defense. (D.I. 27.)  STI's defense alleges that Hilti acted "improperly and unfairly" (at 16) in procuring patent claims in continuation applications that cover STI's accused device, while avoiding STI's publicly available invalidity arguments.  STI's argument in this regard does not identify the type of "unconscionable conduct" that must be pled to support a defense of unclean hands. Quite the contrary, the Federal Circuit has explained that it is entirely appropriate to procure continuation patents that target a competitor's product.

STI's defense also alleges that Hilti committed fraud on the United States Patent and Trademark Office.  STI's fraud-based defense is rooted in the doctrine of inequitable conduct.  Yet STI has fallen well short of alleging facts that would support such a claim—nor could STI plead such facts.  STI's defense also accuses Hilti of anticompetitive conduct through the assertion of the sole patent-in-suit.  This portion of STI's defense is based in the antitrust laws as set forth in the Sherman Act. Yet STI does not even come close to alleging facts to support its allegation of an

1

antitrust violation—nor could STI plead such facts.  STI should not be permitted to skirt the specific pleading requirements for claims of inequitable conduct and antitrust violation by packaging those arguments as a so-called unclean hands defense.

STI's Answer also includes an "Introduction" that includes impertinent, immaterial, and scandalous material.  For example, STI's "Introduction" accuses Hilti of "attempting to use this Court as an instrument to bludgeon STI."  (D.I. 27 at 2) (emphasis added.)  As another example, STI's "Introduction" asserts that "Hilti has resorted to tactics such as denigrating the EZ-Path for the past 15 years, and introducing products in recent years that infringe STI's intellectual property rights." These allegations have nothing to do with the claims and defense in this case, and Hilti respectfully asks the Court to strike STI's "Introduction."

## II.  NATURE OF STAGE OF PROCEEDINGS

Hilti filed its complaint in this action on March 6, 2023, accusing STI of infringing U.S. Patent No. 11,578,822 (the "'822 Patent").  (D.I. 1.)  On March 14, 2023, Hilti filed a Motion to Consolidate this case with the related case pending in this Court captioned as *Hilti Aktiengesellschaft v. Specified Technologies, Inc.*, 12-cv-1248-CFC (the "1248 Case").  (D.I. 14.)  On April 10, 2023, STI opposed Hilti's Motion to Consolidate and filed a Cross-Motion to Sever and Consolidate claims from the 1248 Case with this case.  (D.I. 18, 19.)  On April 17, 2023, Hilti filed a

Reply in Support of its Motion to Consolidate and an Opposition to STI's Cross-Motion.  (D.I. 20, 22.)  On April 24, 2023, STI filed a Reply in Support of its Cross-Motion.  (D.I. 23.)  The parties' respective motions remain pending.

On April 27, 2023, STI filed its Answer and Counterclaims to Hilti's Complaint.  (D.I. 24.)  On May 8, 2023, STI filed its Answer and First Amended Counterclaims to Hilti's Complaint (the "Answer").  (D.I. 27.)  In its Answer, STI asserted a defense of "Unclean Hands."  (*Id*. at 15.)  On May 23, 2023, Hilti submitted its Answer to STI's Counterclaims.  At the same time, Hilti filed the instant motion seeking to strike STI's Unclean Hands defense as presently pled.

## III.   SUMMARY OF ARGUMENT

1.   STI's so-called unclean hands defense alleges that Hilti acted "unfairly and improperly" in prosecuting the '822 Patent.  Even if true—which it is ***not***—STI's argument does not identify the type of "unconscionable" conduct required for an unclean hands defense.  STI has also attempted to insert complex issues concerning inequitable conduct and antitrust violations into this case through its so-called unclean hands defense, without meeting the applicable pleading standards for such claims.  If the Court were to permit the defense to proceed as pled, Hilti would suffer significant prejudice from having to litigate complex issues that have not been properly pled.  Accordingly, the Court should strike STI's unclean hands defense.

2.     STI's "Introduction" includes scandalous, impertinent, and immaterial allegations that prejudice Hilti in the marketplace. The Court should strike STI's "Introduction."

## IV.     STATEMENT OF FACTS

On September 22, 2022, Hilti initiated the 1248 Case, filing a Complaint for patent infringement alleging infringement by STI of, *inter alia*, U.S. Patent Nos. 10,295,088 (the "'088 Patent"), 10,663,090 (the "'090 Patent"), and 11,242,946 (the "'946 Patent").  (1248 Case, D.I. 1, ¶8.)  Thereafter, STI filed a voluminous Answer and Counterclaims accompanied by declaration evidence and numerous theretofore confidential documents. (*Id.,* D.I. 13.)  In Counts 1-3 of its Counterclaims in the 1248 Case, STI identified various alleged prior art references, alleged prior public uses, and alleged prior art on-sale activities, and set forth its belief as to why claim 1 of each of the '088, '090, and '946 Patents are allegedly invalid.  (*Id.* ¶¶18-86; ¶¶87-148; ¶¶149-221.)

On September 22, 2022, Hilti filed Application No. 17/934,345 (the "'345 Application"), which later matured into the '822 Patent, which is the sole patent asserted in this case.  (D.I. 1. Exhibit 1.)  The '822 Patent is a continuation of an application filed in the same patent family as the '088, '090, and '946 Patents. During the prosecution of the '345 Application, Hilti filed an Information Disclosure Statement ("IDS") disclosing to the USPTO: a) the 1248 Complaint and all of its

4

exhibits; b) STI's Answer in the 1248 Case and all of its exhibits; and c) all of the alleged prior art materials identified by STI in STI's Answer.  (D.I. 1-1, Exhibit 5 (IDS).)  Thus, all of the materials listed on the IDS were disclosed to the USPTO in connection with the prosecution of the '345 Application.

Thereafter, Patrick F. Brinson, the patent examiner responsible for examining the '345 Application, considered all of the materials disclosed by Hilti, including STI's publicly available invalidity arguments concerning the '088, '090, and '946 Patents, which are in the same patent family as the '822 Patent.  (*See* D.I. 1-1, Exhibits 6 and 7 (Information Disclosure Statements initialed by Patrick F. Brinson and stating "ALL REFERENCES CONISDERED EXCEPT WHERE LINED THROUGH. /P.F.B./", with no references lined through.)  Having considered all cited materials, the Examiner then allowed the '822 Patent.  The '822 Patent issued on February 14, 2023, and Hilti filed the above-captioned suit on March 6, 2023.

## V.   LEGAL STANDARDS

"Rule 12(f) permits a court to 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'"  *Barry v. Stryker Corp.*, No. 20-1787, 2023 WL 2733652, at *5 (D. Del. Mar. 20, 2023) (*report and recommendation* adopted in relevant part, No. 20-1787, D.I. 261) (quoting Fed. R. Civ. P. 12(f)). "Motions brought under Rule 12(f) are generally disfavored and

should not be granted unless the insufficiency of the defense is clearly apparent." *Id.* (internal quotation marks and citation omitted).

"'Unclean hands is an equitable defense requiring the showing of five elements: (1) the party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to matter in issue (4) that injures other party (5) and affects balance of equities between litigants. *Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, No. 19-1727-RGA, 2022 WL 16921800, at *2 (D. Del. Nov. 14, 2022) (quoting *Sonos, Inc. v. D&M Holdings, Inc.*, 2016 WL 4249493, at *5 (D. Del Aug. 10, 2016). "The pleadings standard for unclean hands depends on the specific conduct alleged. A counterclaim or affirmative defense that alleges fraudulent conduct must be pled with particularity under Rule 9(b)." *Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, No. 19-1727-RGA, 2022 WL 11819975, at *3 (D. Del. Oct. 20, 2022).

## VI.   ARGUMENT

### A.   The Court should strike STI's "Unclean Hands" defense.

For its Seventh Affirmative Defense, STI asserts a defense of "Unclean Hands." (D.I. 27 at 15.) STI identifies three separate arguments as its purported basis for its so-called "unclean hands" defense. First, STI alleges that Hilti timed the filing of the application that led to the '822 Patent so that it could "improperly and unfairly benefit" by obtaining STI's positions on noninfringement and invalidity

for use in prosecuting additional patent claims based on public materials. (D.I. 27 at 16.) Second, STI alleges that when Hilti submitted STI's invalidity arguments to the USPTO, Hilti "incorrectly and incompletely described prior art disclosed by STI in the 1248 Case in a manner that deceptively obscured the materiality and relevance of the prior art from the Examiner." (*Id.*) Third, STI alleges that "Hilti has improperly sought to delay competition in the market of firestopping technology" by obtaining the '822 Patent, which STI alleges to be invalid, and then asserting that patent against STI. (*Id.*) Each of these allegations is without a factual or legal basis sufficient for STI to plead a so-called defense of unclean hands.

### 1. Hilti's conduct in obtaining continuation patents was consistent with settled patent prosecution practices.

STI asserts that "Hilti intentionally timed the filing of the application that became the '822 patent so that it could improperly and unfairly benefit from its already filed lawsuit, the 1248 Case, which would flush out STI's invalidity and non-infringement defenses and allow Hilti to attempt to craft its patent claims in a manner to attempt, albeit unsuccessfully, to avoid STI's invalidity and non-infringement defenses." (D.I. 27 at 16.) To be clear, Hilti did not file the 1248 Case to flush out STI's invalidity and noninfringement defenses. Hilti and STI are direct competitors in the firestop space, and, in Hilti's view, STI's infringement of Hilti's patents has

and continues to cause Hilti harm.  Accordingly, Hilti filed the 1248 Case to halt STI's infringement of nine United States patents.[1]

At the time it filed the '345 Application and up until service of STI's Answer, Hilti had no reason to suspect that STI would include voluminous counterclaims in its responsive pleading accompanied by declarations and the public disclosure of materials that had previously been confidential.  Indeed, STI's pleading is far from the typical pleading one expects to see in response to an infringement allegation. STI made a strategic choice to file the volume and types of documents it did in an effort to set up its Rule 12(c) Motion filed in the 1248 Case (D.I. 29).  When STI made that strategic decision, Hilti submitted the publicly filed materials to the USPTO during prosecution of its pending patent applications.  The USPTO then considered all of the disclosed material and issued the '822 Patent over STI's invalidity materials.

STI is clearly displeased with that result, but that does not make Hilti's conduct "improper" or "unfair" as STI alleges.  (D.I. 27 at 16.)  Indeed, even if the Court accepts as true STI's allegation that Hilti prosecuted patents to cover STI's device while avoiding STI's alleged prior art, there is nothing at all improper, much

---

[1] Hilti filed a separate lawsuit, 22-cv-1383-CFC, to halt STI's indirect infringement of four additional United States patents unrelated to the '822 Patent or any of the patents at issue in the 1248 Case.

less unconscionable, about such an action so long as the material cited by Hilti was publicly available. *Allergan*, 2022 WL 16921800 at *5.

Hilti, like scores of other sophisticated companies, has a typical practice to keep a patent family pending by filing continuation applications. One reason that companies keep patent families pending is to react to changes in the marketplace (e.g., litigation or newly introduced products) by filing targeted patent claims in continuation applications. In fact, the Federal Circuit has expressly found that there is nothing wrong with the practice of drafting patent claims to cover competitive technology in continuation applications:

> [T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market, nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application. Any such amendment or insertion must comply with all statutes and regulations, of course, but, if it does, its genesis in the marketplace is simply irrelevant and cannot of itself evidence deceitful intent.

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 874 (Fed. Cir. 1988).

Here, to the extent Hilti crafted its '822 Patent claims to cover STI's devices while avoiding STI's invalidity arguments, Hilti did so based on ***public information***—indeed information STI chose to make public in its own pleading. Thus, STI's defense that Hilti "improperly" crafted continuation claims to cover

STI's accused device cannot sustain a defense of unclean hands; there was nothing unconscionable about Hilti's conduct.[2] *Allergan*, 2022 WL 16921800 at *5 (granting judgment on the pleading on the issue of unclean hands and noting that "I would think, by definition, there is nothing by itself wrong with using public information to shape patent strategy including the drafting of claims.").

### 2. STI has not properly pled its fraud-based unclean hands theory

STI's next allegation is that, even though Hilti disclosed all of the information STI cited in support of its invalidity defense to the USPTO, Hilti deceived the USPTO by doing so. Specifically, STI claims that "Hilti submitted an Information Disclosure Statement which incorrectly and incompletely described [alleged] prior art disclosed by STI in the 1248 Case in a manner that deceptively obscured the materiality and relevance of the prior art from the Examiner." (D.I. 27 at 16.) STI's allegation that Hilti deceived the USPTO concerning the materiality of prior art is plainly an inequitable conduct allegation—albeit one that falls well short of meeting the applicable pleading standard. *See Gilead Sciences, Inc. v. Merck & Co. Inc.*, 888

---

[2] STI further alleges that claims 8 and 12 were not adequately described in the specification of the '822 Patent. (D.I. 27 at 16.) The USPTO disagreed when it issued the '822 Patent, and STI can pursue that defense as it deems appropriate. But an alleged lack of written description support is not an unclean hands defense; it is an invalidity defense to be proven by clear and convincing evidence. *See Allergan*, 2022 WL 16921800, at *6 ("Second, if Sun were to prove the facts alleged in its unclean hands counterclaim, it would, at best, prove that the '516 Patent is invalid due to inadequate written description.")

F.3d 1231, 1240 (Fed. Cir. 2018) ("Nor is this a case involving alleged deficiencies in communications with the PTO during patent prosecution, for which this court's inequitable-conduct decisions . . . set important limits on conclusions of unenforceability through that doctrine").

STI should not be able to skirt the pleading requirements for inequitable conduct by calling its inequitable conduct argument an "unclean hands" defense. Indeed, the Federal Circuit has expressly cautioned courts on the "potential for misuse" of the unclean hands doctrine and noted the need "to ensure that the unclean-hands doctrine operates in harmony with, and does not override, this court's inequitable-conduct standards governing unenforceability challenges based on prosecution communications with the [Patent Office]." *Gilead*, 888 F.3d at 1240 & n. 3 (Fed. Cir. 2018).

"Inequitable conduct, while a broader concept than fraud, must be pled with particularity." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Following *Exergen*, in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011), the Federal Circuit "established a stricter standard of proof for inequitable conduct claims." *Invista N. Am. S.a.r.l. v. M&G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 12304544, at *4 (D. Del. May 3, 2013) (*report and recommendation* adopted at D.I. 350). As to the materiality of prior art, the Court found that "the party making an inequitable conduct claim must show that but

11

for an omission or misrepresentation by the patent applicant, the PTO would not have allowed a patent claim to issue." *Id.* (discussing *Therasense*).  Based on that standard, "a party must plead facts allowing for the reasonable inference that the information withheld from or misrepresented to the PTO was 'but for' material." *Id.* at *5.

Here, STI cannot meet this standard because the Examiner expressly considered the materials.  (D.I. 1-1, Exhibits 6 and 7.)  Even if Hilti's description of the title of the documents was "incorrect or incomplete" as alleged, albeit incorrectly, by STI, the fact remains that the Examiner still considered all of the materials.  And despite considering all of the materials, the Examiner decided to issue the '822 Patent.  For that reason, STI cannot possibly plead a legally sufficient claim of inequitable conduct based on but-for materiality.[3]

In addition to requiring "but for materiality," inequitable conduct requires a specific intent to deceive.  In *Therasense*, the Court emphasized that "specific intent to deceive must be the single most reasonable inference able to be drawn from the

---

[3] To the extent STI relies on the affirmative egregious misconduct aspect of inequitable conduct, such reliance would also legally fail.  "Affirmative egregious misconduct, as described in *Therasense*, is a relatively narrow category; the examples given in that opinion include truly extreme misdeeds, such as filing unmistakably false affidavits, suborning perjury, bribing witnesses, and actively suppressing evidence." *Smith & Nephew, Inc. v. Interlace Medical, Inc.*, No. 10-10951-RWZ, 2013 WL 3289085, at *2 (D. Mass. Jun. 27, 2013).  STI could not plead that Hilti's alleged "incorrect" and "incomplete" titling of STI's invalidity defense documents rises to the level of affirmative egregious misconduct.

evidence[.]" *Id.* At the pleading stage, however, a party must plead facts "from which the [c]ourt could reasonably infer that the patent applicant made a deliberate decision to deceive the PTO." *Id.* (quoting *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955-LPS-CJB, 2012 WL 600715, at *6-9 (D. Del. Feb. 3, 2012) (alteration in original). Here, STI cannot meet that pleading burden because there is no reasonable argument that Hilti intended to deceive the USPTO by the manner in which Hilti prepared its IDS.

While STI claims that Hilti "incorrectly and incompletely" described STI's invalidity materials, STI ignores the fact that Hilti's IDS identified the documents according to the titles STI gave the documents. For example, the entry below shows how Hilti identified the Answer and Counterclaims STI used to tell the story on which its Judgment Motion is based.

|  | B127 | Document 13, Filed November 21, 2022, "SPECIFIED TECHNOLOGIES, INC.'S ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT, DEFENSES, AND COUNTERCLAIMS" in Case 1:22-cv-01248-CFC (in the U.S. District Court for the District of Delaware). |

(D.I. 1-1, Ex. 7 at Sheet 6 of 10.)

This text mirrors the title STI affixed to the document (1248 Action, D.I. 13) as shown below:

## SPECIFIED TECHNOLOGIES, INC.'S ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT, DEFENSES, AND COUNTERCLAIMS

Because Hilti referred to the documents by their title, there is no basis on which the fact finder could infer an intent to deceive based on the manner in which Hilti

identified the documents on the IDS—especially where, regardless of titling, the Examiner considered all of the materials referenced on the IDS.

### 3. STI should not be permitted to shoe-horn an antitrust claim into its unclean hands defense.

As a corollary to its fraud allegations, STI argues that "Hilti has improperly sought to delay competition in the market of firestopping technology" through the assertion of the '822 Patent. (D.I. 27 at 16.) STI's argument plainly sounds in the antitrust laws of the Sherman Act. However, Hilti is immune from antitrust liability relating to its assertion of the '822 Patent. As such, the antitrust portion of STI's unclean hands defense does not provide a legally cognizable defense.

As a general rule, a patent confers the right to exclude, and the Supreme Court has recognized that a patentee should be exempt from antitrust liability when it asserts its patent under the principle known as *Noerr-Pennington* immunity. *See Tyco Healthcare Group LP v. Mutual Pharms. Co., Inc.*, 762 F.3d 1338, 1343 (Fed. Cir. 2014) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)). There are two exceptions to *Noerr-Pennington* immunity: 1) sham litigation and 2) *Walker Process* fraud. *Id*; *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1364-65 (Fed. Cir. 1998). STI should not be able to skirt having to plead an exception to *Noerr-Pennington* immunity by shoehorning antitrust arguments into

its unclean hands defense.  Indeed, no reasonable basis exists on which STI could plead an exception to *Noerr-Pennington* immunity.

Nor should STI be able to skip the other pleading requirements for a well-pled antitrust claim.  For example, in order to state a claim for attempted monopolization under Section 2 of the Sherman Act, a plaintiff must establish: (1) that a defendant has engaged in predatory or anticompetitive conduct, with (2) specific intent to monopolize, and (3) a dangerous probability of achieving monopoly power. *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129, 140 (3d Cir. 1998).  To demonstrate a dangerous probability of achieving monopoly power, a party asserting an antitrust claim must define the relevant market.  *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

"Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Id.*  STI should not be permitted to circumvent these pleading requirements simply by characterizing an antitrust argument as an "unclean hands" defense.

15

### 4.  Allowing STI to insert inequitable conduct and antitrust issues into this case through an unclean hands defense will prejudice Hilti.

In considering a Rule 12(f) motion, the Court must consider the prejudice to the party seeking to strike the defense that would result if the defense were permitted to proceed.  *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009).  Here, Hilti would suffer significant prejudice if STI were permitted to proceed on its legally insufficient unclean hands defense.

In *Therasense*, with regard to inequitable conduct, the Federal Circuit "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."  *Therasense*, 649 F.3d at 1290.  In so doing, the Court noted such action was appropriate due to "increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality" that arose from flimsy inequitable conduct allegations.  *Id*.

Indeed, the Court noted that inequitable conduct allegations "brought on the slenderest grounds" had "plagued not only the courts but also the entire patent system." *Id*.  It is exactly these types of allegations that STI seeks to submarine into this case through its unclean hands defense.  If STI were permitted to include inequitable conduct allegations in this case without proper pleading, Hilti will be

prejudiced by spending the time and money necessary, including in discovery, to defend against allegations that have not been—and cannot be—properly pled.

The same is true with respect to STI's attempted inclusion of antitrust arguments in its purported unclean hands defense. Antitrust claims are notoriously complex and expensive to litigate. *See*, *e.g.*, *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08-1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) ("As the Supreme Court, the Seventh Circuit, and this court have all recognized, discovery in *any* antitrust case can quickly become enormously expensive and burdensome to defendants."). For that reason, courts frequently bifurcate antitrust issues from patent cases, even where there are overlapping issues between the patent and antitrust causes of action. *See*, *e.g.*, *Orthophoenix, LLC v. Dfine, Inc.*, No. 13-1003-LPS, 2015 WL 1938702, at *1 (D. Del. Apr. 28, 2015) ("Overall, the circumstances do not warrant departure from the Federal Circuit's general guidance that antitrust issues should typically be bifurcated in patent cases.") Foisting the burden of addressing antitrust issues where a claim has not been formally pled onto Hilti would thus impose substantial prejudice on Hilti.

## B.    The Court should strike STI's "Introduction" to its Answer

STI's Answer includes what STI's calls an "Introduction" that is laden with immaterial, impertinent, and scandalous material. The Court should strike such material pursuant to Rule 12(f). *Symbol Techs.*, 609 F. Supp. 2d 353 (granting

motion to strike a defendant's "Introduction and Summary" where plaintiff argued that it included scandalous and impertinent material). Specifically, STI's "Introduction" accuses Hilti of "attempting to use this Court as an instrument to **bludgeon** STI." (D.I. 24 at 2.) The verb "bludgeon" is defined as beating someone repeatedly with a bludgeon or other heavy object. Such an accusation is both scandalous and entirely impertinent to the claims and defenses in this action. It is one thing to argue that a party does not infringe a patent or that the patent is invalid, it is an entirely different matter to accuse your opponent of attempting to use the Court as an instrument to bludgeon you.

In addition, STI's "Introduction" asserts that "Hilti has resorted to tactics such as denigrating the EZ-Path for 15 years, and introducing products in recent years that infringe STI's intellectual property rights." Hilti's alleged conduct in the marketplace is not pertinent or material to any properly pled claim or defense in this proceeding. Nor is Hilti's alleged infringement of patents that STI has not asserted in this case.

The rest of STI's "Introduction" sets up the foregoing and the most plainly improper portions of STI's "Introduction." For example, STI calls Hilti an "industry giant" that "has unloaded on STI, a small company of only 230 employees" a patent infringement lawsuit. STI then characterizes this lawsuit as the "latest move in [Hilti's] campaign against STI." Again, these allegations have little, if any, relevance

to the claims and defenses in this action, and were included simply to set up STI's scandalous accusations.

The allegations included in STI's "Introduction" prejudice Hilti in the marketplace by painting an unfair picture of Hilti as a corporate giant that resorts to intimidation tactics to "bludgeon" its competitors.  In reality, Hilti succeeds in the marketplace based on its technology and talented employees.[4]

## VI.    CONCLUSION

For the foregoing reasons, Hilti respectfully submits that the Court should strike STI's unclean hands defense.

Dated: May 23, 2023

*Of Counsel:*

GARDELLA GRACE P.A.

W. Cook Alciati
80 M Street SE, 1st Floor
Washington, D.C. 20003
(703) 721-8379
calciati@gardellagrace.com

Michael A. Dorfman
2502 North Clark Street, Suite 222
Chicago, IL 60614
(773) 755-4942
mdorfman@gardellagrace.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/  Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com

*Attorneys for Hilti
Aktiengesellschaft*

---

[4] Notably, STI did not include these allegations as numbered paragraphs in STI's counterclaims that Hilti could admit, deny, or otherwise respond.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 23, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

## <u>BY EMAIL</u>

Austen C. Endersby
FOX ROTHSCHILD LLP
919 N. Market Street, Suite 300
Wilmington, DE 19801
- and -
2020 K Street, Suite 500
Washington, DC 20006
aendersby@foxrothschild.com

*Attorneys for Defendant*
*Specified Technologies Inc.*

Jeff E. Schwartz
FOX ROTHSCHILD LLP
2020 K Street, N.W., Suite 500
Washington, D.C. 20006
JESchwartz@FoxRothschild.com

Howard S. Suh
FOX ROTHSCHILD LLP
101 Park Avenue, 17th Floor
New York, New York 10178
HSuh@foxrothschild.com

Paul W. Kalish
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, New Jersey 08648-2311
PKalish@FoxRothschild.com

Dated: May 23, 2023

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street

Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com

*Attorneys for Hilti*
*Aktiengesellschaft*

29756714.1